## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ANGELA M. MANLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-108-CVE-PJC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Angela M. Manly ("Manly"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying Manly's applications for disability insurance benefits and for supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The matter has been referred to the undersigned Magistrate Judge for report and recommendation. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be affirmed.

### Procedural History

Manly filed her applications for disability insurance benefits and supplemental security income benefits with a protective filing date of June 3, 2010. (R. 244-252). She alleged onset of disability as of May 21, 2010. (R. 244, 248). The applications were denied initially and on reconsideration. (R. 123-130, 136-141). An administrative hearing was held before ALJ John W. Belcher on July 14, 2011. (R. 34-62). By decision dated August 19, 2011, the ALJ found that Manly was not disabled. (R. 106-118). Manly requested review of the decision, and on

September 18, 2012, the Appeals Council granted Manly's request, vacated the hearing decision and remanded the case to the ALJ for evaluation of new and material evidence. (R. 120-121). Specifically, the new evidence consisted of reports concerning a July 18, 2011, left shoulder rotator cuff repair; a September 7, 2011, right shoulder rotator cuff repair and a May 21, 2012, surgical procedure to replace Manly's aortic valve. (R. 120).

On July 11, 2013, the ALJ conducted another administrative hearing. (R. 63-97). By decision dated November 7, 2013, the ALJ again found that Manly was not disabled. (R. 10-26). On February 5, 2015, the Appeals Council denied review. (R. 1-5). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481. Manly timely sought review by this court.

## Claimant's Background and Testimony

Plaintiff was 33 years old on the alleged date of onset of disability and 36 on the date of the ALJ's final decision. She has a ninth grade education and formerly worked as a cabinet door sander, a home health aide, certified nursing assistant, hand sander, paver operator, roller operator, housekeeper, tour guide and convenience store clerk. (R. 19). She claims to have been unable to work since May 21, 2010 as a result of numerous issues. (R. 79-87).

Manly testified that, post-surgery, she is still having a "little bit of pain" with her shoulders when she reaches above; due to a pleural effusion in her lung she has trouble breathing if she lays on her left side; she cannot do anything in the heat because it affects her breathing; and her children have to help her with household chores. (R. 79-81). She is able to dress herself and handle things like eating utensils. (R. 79-80). She does not mop, sweep, scrub the tub or carry out trash, but she helps change her bed. (R. 81). She cooks full meals twice a week and is able to drive. (R. 82). She testified that she drives a stick shift car and it does have effects on her

legs. *Id.* She said she had driven herself from the Ponca City/Noble area to Stillwater for the hearing—a distance of 40 to 48 miles. (R. 82-83). She sometimes has problems with fatigue. (R. 83-84). She takes depression medicine; she also takes Metoclopramide for nausea, and it helps. (R. 84). She suffers from diarrhea but takes no medication for it. (R. 84-85). She continues to have pain "all over" and takes hydrocodone once or twice a week. (R. 85). She has chest pain and palpitations. *Id.* She has trouble sleeping and gets only three or four hours of sleep a night. (R. 86). She lies down two or three times during the day for 10 to 20 to 30 minutes but does not go to sleep. (R. 87). She believes "the pain and the palpitations and if I go out in the heat or anything would cause a lot of problems," and she has a tendency of scratching a lot because of her anxiety. (R. 83). She has seen a counselor for anxiety. *Id.*

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed

Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Wall*, 561 F.3d at 1052  (quotation and citation omitted).  Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*

## Decision of the Administrative Law Judge

In his second decision, the ALJ found that Manly met insured status requirements through March 31, 2014 and, at Step One,  that she had not engaged in any substantial gainful activity since her alleged onset date of May 21, 2010.  (R. 12).  He found at Step Two that Manly had severe impairments of aortic valve disease and hypertension.  (R. 12).  At Step Three, he found that her impairments did not meet any listing.  *Id.*  He found that Manly had the RFC to

---

impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

perform light work.  (R. 13).  He limited her to lifting/carrying up to ten pounds frequently and twenty pounds occasionally; standing/walking six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; no running or climbing of ladders, ropes or scaffolding; able to occasionally kneel, bend or stoop, balance, crouch, crawl and climb stairs; limited to occasional bilateral reaching above the shoulder; unable to work at unprotected heights; and requires an air-conditioned work environment.  *Id.*  At Step Four, the ALJ determined that Manly could perform past relevant work as a convenience store clerk; as a tour guide, provided her work is performed inside in a controlled environment; and as a cabinet door sander if not required to do any lifting above shoulder level.  (R. 20).  At Step Five, he made the alternative finding that there are other jobs existing in the national economy that Manly could perform taking into account her age, education, work experience and RFC. (R. 20-21).  These included bagger, inspector/hand packager and small products assembler II.  (R. 21).     The ALJ found that Manly had not been disabled from May 21, 2010, through the date of his decision.  *Id.*

## Review

On appeal, Manly argues the ALJ's credibility analysis was completely inadequate and erroneous because he provided no reasons explaining or supporting his credibility findings and failed to link his credibility finding to any supporting evidence; he failed to consider the substantial evidence related to most of the factors considered in a proper credibility analysis; and the substantial evidence of the record as a whole overwhelmingly contradicted this finding.

## Analysis

"[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations, when supported by substantial evidence.  *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted).

Those findings "should be closely and affirmatively linked to substantial evidence and not just a

conclusion in the guise of findings." *Id.* (internal quotation marks and citation omitted).

"[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v.*

*Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

> Manly asserts the ALJ's credibility analysis was limited to the following statement:

> After careful consideration of the evidence, I find that the claimant's medically
> determinable impairments could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not entirely credible for
> the reasons explained in this decision.

(R. 19).  She contends the ALJ provided no reasons explaining or supporting his credibility

finding and failed to link the credibility finding to any supporting evidence.  A review of the

decision, however, proves otherwise.

> In formulating the RFC, the ALJ cited the August 11, 2010, RFC prepared by Kenneth

Wainner, M.D., the report of state agency reviewing physician Luther Woodcock, M.D., and the

RFC assessment of John R. Clark, M.D., who testified at the hearing—all of whom concluded

Manly can perform light exertional work.  (R. 18-19, ref. Exs. 4F and 6F).   Additionally, he

summarized Manly's hearing testimony and concluded the RFC was "reasonably consistent" with

it.  (R. 14).

> Further, he extensively reviewed the records of Manly's treating physicians, including Dr.

Kahn, Dr. Schiff, Dr. Vaidya, Dr. Fast, Dr. Sparks and Dr. Holmes, and concluded the records

supported the RFC prepared by Dr. Wainner.  (R. 14-18).

> With respect to mental health issues, the ALJ acknowledged "it was suggested at the

hearing that Exhibit 9F indicates anxiety and major depressive disorder."  (R. 14).  The ALJ then

reviewed Ex. 9F—the office treatment records of Dr. Fast—at length.  (R. 14-15, ref. Ex. 9F).

The ALJ noted claimant had responded "yes" to a query about "depression," but observed that "[t]he above medical issues notwithstanding, Dr. Fast reported the claimant to be alert and oriented, and to be of pleasant, euthymic mood; and claimant reflected normal judgment and good orientation." (R. 14, ref. Ex. 9F, pp. 1-2). Dr. Fast had diagnosed Manly with shoulder pain and headache and his assessment "was not inclusive or indicative of any assessed mental, psychological or behavioral impairment or deficiency." *Id.* The ALJ stated that "[t] he same assessment of affect, mood, and mental functioning was repetitively entered by Dr. Fast without any indication of any clinically significant mood, cognitive, or other mental impairment." (R 14-15, ref. Ex. 9F at 4-6, 8-10 and Ex. 30F, additional records of visits to Dr. Fast). The ALJ noted that when claimant presented to Dr. Fast on December 8, 2010, to establish a primary care source, she declared positive for "anxiety, depression, memory loss, and stressors." But he pointed out that her "[p]sychology was assessed as pleasant, euthymic mood, normal judgment, good memory, and normal orientation and no 'mental,' behavioral, psychiatric, or psychological assessment was suggested." (R. 15, ref. Ex. 9F, p 10). The ALJ commented, "Some degree of anxiety, consternation, etc. is doub[t]les[s] associated with the claimant's medical issues, but no 'mental' pathology, deficiency, deviancy, cognition distortion, or significant abnormality or deficit is evidence d by Dr. Fast's reports." (R. 15).

The ALJ traced the history of Manly's cardiovascular issues from her initial emergency room visit on February 19, 2009, where she was seen by Dr. Khan for palpitations, precordial chest pain and heart murmur (R. 15, ref. Ex. 1F), through May 21, 2012, when she underwent a Ross procedure for aortic valve replacement, and post-surgery assessment by the attending physician, Dr. Gibson, who concluded she had a "normal functioning aortic valve, status post Ross procedure" and "[n]o evidence of any significant valvular abnormalities in the pulmonic position

either." (R. 16-17, ref. Ex. 33F, pp. 1-2). The ALJ noted that her hypertension had "been under reasonably good control as noted throughout the narrative in this decision." (R. 17, ref. Ex. 9F at pp. 3, 5, 7, 20 and 23).

Regarding musculoskeletal issues, he discussed the history and treatment of Manly's rotator cuff tears, including July 18, 2011 and October 17, 2012 arthroscopic procedures on her right shoulder, and the September 7, 2011, left shoulder arthroscopy, as well as physical therapy before and after the surgeries. (R. 17-18, ref. Exs. 9F, 10F, 11F, 13F, 14F, 16F, 18F). The ALJ noted Dr. Sparks, who treated her for her shoulder issues, reported December 4, 2012, that "shoulder feels good. Shoulder doing very well." (R. 18, ref. Ex. 14F, pp. 30-88, 91-153; Ex. 13F, p. 10).

The ALJ acknowledged that Manly had her gallbladder removed on August 19, 2010 after an ultrasound on August 10, 1010 indicated hepatic steatosis and cholelithiasis. (R. 17, ref. Ex. 5F). Further, he noted that pelvic pain he had experienced as a result of an ovarian cyst had improved after rupture of the cyst. (R. 18, ref. Ex. 30F).

The ALJ went on to state:

These physicians are all given substantial weight. Their medical evidence indicates the claimant's alleged symptoms, though significant, serious, severe by the de minimis standard of severity applicable in a Social Security "disability" adjudication, are not so limiting as to preclude all substantial gainful activity. Further, Luther Woodcock, M.D., a State agency reviewing physician, reported November 3, 2010, that he concurred with the August 11, 2010, physical capacities assessment of Kenneth Wainner, M.D., prior State agency reviewing physician, both of whom concluded the claimant can perform light exertional work (Exhibits 6F, 4F). In sum, the above residual functional capacity assessment is supported by Dr. Kahn, Dr. Schiff[,] Dr. Vaidya, Dr. Sparks, Dr. Wainner, Dr. Woodcock, and Dr. Fast as described supra.

Further, the above residual functional capacity assessment is specifically on point with the residual functional capacity assessment of Dr. Clark, the medical expert, as given at the hearing. Great weight is given to the assessment of Dr. Clark.

(R. 18-19).

Support in the medical record is among the various factors properly considered in making a credibility determination.  20 C.F.R. §§ 404.1529, 416.929.  In his decision, the ALJ discussed the portions of the records he believed contradict Manly's subjective statements, thus satisfying his duty to support his credibility finding with substantial evidence.  Furthermore, it is not the diagnosis of a condition, but the functional consequences of the condition that form the basis of a disability determination. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of arthritis says nothing about the severity of the condition); *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (unpublished)  (diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the cause of a claimant's condition).  The record is devoid of any opinion from any treating provider suggesting any functional limitations.

Manly also contends the ALJ's analysis "failed to properly recognize the substantial evidence demonstrating Ms. Manly's many efforts to seek treatment for her various problems." [Dkt. #15 at 5]. But "[o]ur precedent 'does not require a formalistic factor-by-factor recitation of the evidence . . . [so] long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility.'" *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting *Qualls v. Apfel*, 20 F.3d 1368, 1372 (10th Cir. 2000).

### Conclusion

The undersigned finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the court and further that there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding plaintiff not disabled be AFFIRMED.

### Objections

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation, but must do so by May 11, 2016.  If specific written objections are timely filed, the District Judge assigned to this case will make a *de novo* determination in accordance with Rule 72(b).  A party waives District Court review and appellate review by failing to file objections that are timely and sufficiently specific (the "firm waiver rule").  *Moore v. Astrue*, 491 Fed. Appx. 921, 923 (10th Cir. 2012) (unpublished), citing *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

ENTERED this 27th day of April, 2016.

_____

Paul J. Cleary
United States Magistrate Judge